IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Frankie S. Snider,            ) | Civil Action No. 6:10-2460-TLW-KFM |
|          Plaintiff,   ) | |
|                 ) | **REPORT OF MAGISTRATE JUDGE** |
|      vs.         ) | |
|                 ) | |
| Michael J. Astrue,       ) | |
| Commissioner of Social Security,   ) | |
|                 ) | |
|         Defendant.   ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance benefits ("DIB") on April 24, 2007, alleging that she became unable to work on October 22, 2004. The application was denied initially and on reconsideration by the Social Security Administration. On November 14, 2007, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and an impartial vocational expert appeared on October 16, 2009, considered the case *de novo*, and on November 18, 2009, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on August 9, 2010. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> 1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.
>
> 2.  The claimant has not engaged in substantial gainful activity since October 22, 2004. (20 C.F.R. §§ 404.1520(b) and 404.1571, *et seq.*)
>
> 3.  The claimant has the following severe impairments: lumbar disc disease and history of 2 back surgeries and torn medical meniscus in her right knee. (20 C.F.R. §§ 404.1520(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).
>
> 5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work with restrictions that require no standing and/or walking over two hours in an 8-hour work day; no standing for more than 20 minutes without changing position; no sitting for more than 2 hours in an 8-hour work day; no standing for more than 20 minutes without changing position; no sitting for more than 2 hours without changing position; no more than the occasional stooping, twisting, crouching, kneeling, balancing and climbing of stairs or ramps; no crawling or climbing of ladders, ropes or scaffolds; and avoidance of hazards, such as unprotected heights, vibration and dangerous machinery.
>
> 6.  The claimant is unable to perform any past relevant work. (20 C.F.R. § 404.1565).

2

7.  The claimant was born July 25, 1968 and is 41 years old, which is defined as a younger individual age 18-49. (20 C.F.R. § 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1560(c) and 404.1566a).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from December 17, 2005 through the date of this decision (20 C.F.R. § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

### APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

3

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* §404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

4

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a  verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff received treatment for a number of impairments including lumbar disc disease and a torn meniscus in her right knee.  In addition, the plaintiff was obese, as she was 69 inches tall and weighed at least 230 pounds (*see, e.g.*, Tr. 154, 266, 271, 366-69, 477-85).  An October 2004 MRI revealed mild degenerative disc protrusion at L4-5 (Tr. 286-87).  In November 2004, the plaintiff underwent a microdiskectomy at L5-S1 (Tr. 292).  After surgery, the plaintiff had good leg strength and a resolution of radicular leg pain (Tr. 306).

5

On November 18, 2005, Dr. John Steichen, the plaintiff's treating orthopaedic surgeon, found that the plaintiff had an excellent recovery from her L5-S1 discectomy from the point of view of strengthening her right lower extremity. The plaintiff's right leg was close to normal. However, Dr. Steichen found that the plaintiff continued to have severe weight bearing back pain (Tr. 322). An MRI exam on that same date disclosed that the plaintiff had a marked loss of disc height at L5-S1 (Tr. 327, 363).

In December 2005, Dr. Richard Weymouth, a State agency physician, reviewed the plaintiff's medical records and assessed her residual functional capacity ("RFC") (Tr. 328-35). Dr. Weymouth opined that the plaintiff could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand or walk about six hours in an eight-hour day; sit about six hours in an eight-hour day; occasionally perform postural activities; and had no other restrictions (Tr. 424-26).

The plaintiff had no treatment for back or leg pain from March 2006 to March 2007, when she began complaining of recurring back pain (Tr. 358-59). In April 2007, she underwent a second surgery, a two-level decompression and fusion at L4-5 and L5-S1 (Tr. 351-53). Post operative x-rays looked good, but the plaintiff complained of radiculopathy (Tr. 434).

In June 2007, Mary Lang, M.D., a State agency physician, reviewed the plaintiff's medical records and assessed her RFC. Dr. Lang opined that the plaintiff could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand or walk about six hours in an eight-hour day; sit about six hours in an eight-hour day; occasionally perform postural activities; and had no other restrictions (Tr. 328-335).

Three months after her April 2007 surgery, Dr. Steichen opined that the plaintiff was not capable of working (Tr. 435). In September 2007, the plaintiff began receiving treatment from Edward Nolan, M.D., who administered a series of injections (Tr. 449-66). Treatment notes showed that the plaintiff's condition improved, generally

6

revealing normal strength, normal sensation, normal reflexes, negative straight leg raise testing, and normal gait (Tr. 453, 456, 459, 463, 465). A January 2009 MRI of the right knee showed a medial meniscus tear (Tr. 467). However, treatment notes show no complaints of right knee pain or treatment for the meniscus tear.

In October 2009, Dr. Nolan opined that the plaintiff could sit for two hours at one time in an eight-hour workday before needing to get up, and she could stand for 20 minutes at one time in an eight-hour workday before needing to sit down and/or move around (Tr. 499-501).

The plaintiff testified at the administrative hearing on October 16, 2009, that she was 41 years old (Tr. 30). She said that she lived with her husband and her two-year-old daughter. She said she had a high school degree and had college training as a pharmacy technician (Tr. 31). She said she was 69 inches tall and weighed 237 pounds (Tr. 32). She said she had a driver's license and was able to drive. She said she drove three times a week, running errands, going to the grocery store, visiting friends or family, and going to church. She said the longest trip was 45 minutes (Tr. 33). She said she needed help putting on her socks because bending aggravated her back. She said she could take care of her personal hygiene (Tr. 34). She said she shopped for groceries, prepared meals, did some laundry, washed and dried dishes by hand, and tried to do other household chores (Tr. 34-35). She said that she was able to read (Tr. 53). She said that she had problems sitting for long periods of time, which she defined as more than two hours (Tr. 39-40). She stated she could lift a five-pound bag of sugar and a gallon jug of milk (Tr. 51). She said she could walk for five minutes at one time (Tr. 52).

The plaintiff further testified that she last worked as a cashier for two or three months in 2007 on a full-time basis (Tr. 34, 37-38). She said she left her work in April 2007 due to back surgery (Tr. 36). She said that she had worked as a cashier for another employer for seven or eight years (Tr. 37).

7

Feryal Jubran, a vocational expert, also testified at the hearing. The ALJ asked Ms. Jubran to consider a person the same age as the plaintiff, with the same educational background and past work experience.   The ALJ presented a series of hypothetical questions.  In the hypothetical relevant here, he limited the person to sedentary work; occasional postural activities, except no climbing of ladders, ropes, and scaffolds; no exposure to hazards; no standing for more than 20 minutes at a time without change of position; and no sitting in excess of two hours without change of position.  Ms. Jubran testified that the person could perform the unskilled, sedentary jobs of machine tender, inspector, and assembler.  She identified the number of those jobs in the regional and national economies (Tr. 55-59).

## ANALYSIS

The plaintiff alleges disability commencing October 22, 2004, at which time she was 36 years old.  She has past relevant work experience as a cashier and pharmacy technician.  The ALJ found that the plaintiff had the following severe impairments: lumbar disc disease with history of two back surgeries and torn medical meniscus in her right knee (Tr. 13).  He determined that the plaintiff had the RFC to perform sedentary work with restrictions that require no standing and/or walking over two hours in an 8-hour work day; no standing for more than 20 minutes without changing position; no sitting for more than two hours in an 8-hour work day; no standing for more than 20 minutes without changing position; no sitting for more than two hours without changing position; no more than the occasional stooping, twisting, crouching, kneeling, balancing and climbing of stairs or ramps; no crawling or climbing of ladders, ropes or scaffolds; and avoidance of hazards, such as unprotected heights, vibration and dangerous machinery.  The ALJ found the plaintiff could not perform her past relevant work but could perform jobs that exist in significant numbers in the national economy (Tr. 17). The plaintiff argues that the ALJ erred by (1)  failing to consider all of her severe impairments and their combined effect on her

8

ability to work; and (2) failing to comply with the requirements of Social Security Ruling ("SSR") 00-4p.

***Obesity and Combined Effect of Impairments***

In her pre-hearing brief, the plaintiff alleged her severe impairments included obesity (Tr. 258). As noted above, the ALJ found that the plaintiff had the following severe impairments: lumbar disc disease with history of two back surgeries and torn medical meniscus in her right knee (Tr. 13). The ALJ did not refer to the plaintiff's obesity in his discussion of her severe impairments nor did he discuss how her obesity limits her ability to work by itself or in combination with other impairments.

Social Security Ruling 02-1p provides guidance concerning the evaluation of obesity in disability claims. The ruling provides that the Social Security Administration "will accept a diagnosis of obesity given by a treating source or by a consultative examiner." SSR 02-1p, 2000 WL 628049, at *3. The ruling further provides, "As with any other medical condition, we will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *Id.* at *4. Furthermore, SSR 02-1p acknowledges that "[o]besity can cause limitation on function," and, thus, in assessing a claimant's RFC, "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." *Id.* at *6. Also, "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." *Id.*

In a disability case, the combined effect of all a claimant's impairments must be considered without regard to whether any such impairment, if considered separately, would be sufficiently disabling. Where there is a combination of impairments, the issue "is

9

not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's 'ability to engage in substantial gainful activity.'" *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. *Id.*

Here, two of the plaintiff's treating physicians, Drs. Nolan and Way, diagnosed her with obesity, and her medical records show that her weight has ranged from 240 to 246 pounds (Tr. 456, 459, 478, 481, 484, 490, 492). At the hearing, the plaintiff testified that she weighed 237 pounds (Tr. 32). The ALJ noted that the plaintiff was obese (Tr.14) but did not explain why her obesity was not a severe impairment. Furthermore, the ALJ did not discuss whether the plaintiff's obesity affected her lumbar disc disease or the torn medical meniscus in her right knee. Upon remand, the ALJ should be instructed to discuss the combined effect of the plaintiff's impairments, including her obesity, on her ability to work.

### SSR 00-4p

The plaintiff further argues that the ALJ erred in failing to comply with SSR 00-4p, which provides in pertinent part:

> When a [vocational expert ("VE")] . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the [Dictionary of Occupational Titles ("DOT")]. In these situations, the adjudicator will:
>
> Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.
>
> When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE . . . evidence to

10

> support a determination or decision that the individual is or is
> not disabled. The adjudicator will explain in the determination
> or decision how he or she resolved the conflict. The adjudicator
> must explain the resolution of the conflict irrespective of how
> the conflict was identified.

SSR 00-4p, 2000 WL 1898704, at *4.

In his RFC finding, the ALJ found, in part, that the plaintiff was limited to no standing for more than 20 minutes without changing position and no sitting for more than two hours without changing position (Tr. 13-14).  The ALJ's hypothetical question to the vocational expert included these limitations (Tr. 56-58).  In finding the plaintiff to be not disabled at step five of the sequential evaluation process, the ALJ relied entirely upon the expert vocational testimony (Tr. 17-18).  In his decision, the ALJ stated, "Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the [DOT]" (Tr. 17).  However, the transcript of the vocational expert's testimony (Tr. 55-60) does not contain any question, discussion, or mention of whether the testimony was consistent with the DOT.  As argued by the plaintiff, the ALJ had an affirmative duty to ensure that the testimony regarding the above limitations was consistent with the DOT or, if not, to obtain an explanation for the discrepancy.  Upon remand, the ALJ should be instructed to comply with SSR 00-4p as discussed above.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. § 405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

s/ Kevin F. McDonald
United States Magistrate Judge

November 16, 2011

Greenville, South Carolina

11